Good morning. May it please the court, Tim Woodward on behalf of a fellow Jerry Nolan. There are two major issues in this case. The first issue, the remedy for the first issue would be a remand for further proceedings to proceed to step five of the sequential analysis. In this case, the ALJ stopped at step four of the sequential analysis with a finding that the claimant could return to half of a previous job that he had performed. And that half was the supervisor part of a job that Mr. Nolan performed as a combination job. I think this court's holding in the Verdigan case is clear that when a past job has consisted of two entirely separate jobs, as it did here, the supervisor and the worker, this guy was a working supervisor, but the vocational expert testified expressly that he was performing two separate, distinct jobs. And so it's improper under Verdigan and Valencia, an older case, to hold that this claimant can return to half of what he previously did at step four. And so the first remedy I would ask is that the court send this case back with instructions to the ALJ that you can't find that he can perform half of his previous job at step four. You have to go to step five and determine whether there are significant numbers of jobs in the national economy that such a claimant could perform. Okay, so the fact that he was the owner of the body shop and did physical labor as well as just in addition to the supervisory function, if the ALJ had concluded that there were a significant number of supervisory jobs without the other half of what Mr. Nolan did in his own past experience, that would have been permissible at step five, but not at step four, is that what you're saying? Well, if the ALJ were to proceed to step five and make an express finding that the previous work experience qualifies Mr. Nolan to be a supervisor in some other shop, you know, where he's not the owner. Well, you said he had two jobs. One was the actual mechanic. What was his other job? He was the owner and the supervisor of the business. Right, so if the ALJ made an express... where you don't have to do manual labor in addition to it? Well... I mean, what's the significance? I guess, Your Honor, the significance is that there's no evidence in this record that such supervisory jobs where the person does not also perform the body shop work do exist in significant numbers. And that would come out at step five. It would. And that isn't an issue at step four. As the Supreme Court recently held in the Thomas case, you don't, at step four, even have to prove that the job exists at all. And in the Thomas case, I guess the past relevant work no longer existed at all in the national economy. Yet the denial at step four was proper in that case because there is no significant numbers inquiry at step four. Indeed, no inquiry at all about whether there is even the existence of the job. The other issue, though, which I think this court would be justified in remanding for an award of benefits. This record is replete with evidence that this man's pain perception is greatly magnified by his psychological status. Now, some doctors in this record have commented, actually quite a few doctors have commented, that based on a solely physical perspective, the objective physical signs aren't such as to warrant the type of pain or the degree of pain, rather, that Mr. Noland has reported. But doctors who have considered both the physical and the psychological aspects of the presentation have concluded that he is severely debilitated by his actual pain experience. Dr. Morrell's report at excerpts on page 152, I think, is illustrative of this point. Dr. Morrell said, this is not simply a manipulative secondary gain profile. This individual does not show a pattern of using his pain for personal gain. And when you combine that statement with other statements in the record to the effect that his pain is psychologically based, for example, the workers' compensation doctor, Dr. Anderson, opined that the major portion of Noland's pain was psychologically based. So, the ALJ, in assessing the residual functional capacity, focused on the physical findings. And the objective physical findings don't take into account the whole picture. Because, as Dr. Anderson said, the major portion, more than half of it, is psychologically based. So, when you focus on the physical findings, as the ALJ did, you necessarily underestimate the degree of impairment. Counsel, I guess I have a question, like my question in the last case. It's my understanding there was a negative credibility determination. Could you just please advise if that's so, and if you contend it was not properly made in law, under what precedential principles? Absolutely, Your Honor. There was a negative credibility finding, as I have discussed in both briefs, but I think more extensively even in the reply brief. Many of the ALJ's negative credibility findings were factually erroneous. For example, the ALJ alleged that he sat for an hour at the hearing. I demonstrated, by going back through the record, that at no point during that hearing could he possibly have sat for more than about 30 or 40 minutes. The ALJ also said that he testified he couldn't sit for longer than, I think, 15 to 30 minutes. In fact, when you examine the testimony, he didn't say that. And I went through the ALJ's negative credibility finding and parsed it out, little piece by piece, and demonstrated that the rationale is improper. Moreover, when you consider the psychologically based aspect of the pain presentation, which the ALJ did not consider really at all, it demonstrates, with double force, why you can't rely on some of these factors that the ALJ relied on. I see my time is almost up, and I would like to reserve it. Good morning, Your Honors. Dave Johnson representing the Commissioner of Social Security, Joanne Barnhart. Counsel, if at some point in your argument you could address the negative credibility determination and your position in contrast to the appellant's position, I would appreciate it. Certainly. The negative credibility determination did not just rely on issues that are related to Mr. Nolan's perception of pain. The ALJ also identified negative credibility indicators, such as contradictions between what Mr. Nolan testified to, that his doctors had told him that he had pinched nerves, and what the evidence revealed, that no doctor ever told him that. That has nothing to do with his perception of pain. The Waddell signs demonstrated on examination don't have anything to do with his perception of pain. What are the Waddell signs? Waddell signs are physical tests that are administered, for instance, if a patient claims low back pain, and only low back pain, the doctor may push on the patient's head and ask if that hurts. And apparently, physiologically, there is no way that applying pressure to the top of the head would hurt the lower back. And in Mr. Nolan's brief, he talks about how Dr. Waddell has disagreed with the application of his signs and whether or not they really undermine credibility in all cases. What we have in this case is that physicians practicing applied them and drew conclusions from them, and the ALJ was entitled to utilize those physicians' professional opinions, regardless of what other debates may be going on in the literature. In addition, Dr. Claire Anderson, who examined claimant Mr. Nolan, noted that his ability, his actual demonstrated ability to stand on his heels and stand on his toes, was incompatible with the test results, the motor power testing that she administered. These have nothing to do with his perception that he's in pain. It has to do with his demonstrated abilities and, therefore, his credibility, independent of the existence of any psychological limitations. And I'd like to point out that step two, whether or not there is a psychological impairment that causes more than minimal work-related limitations, is not an issue in this case. Claimant has never contested that, and the non-severe adjustment disorder, which the ALJ found, was accepted by Mr. Nolan. The evaluation by Dr. Murrell occurred two years prior to Mr. Nolan even claiming that he was disabled, and after two months of treatment, Dr. Murrell noted significantly improved somatoform behavior. In other words, the somatoform behavior, the I have pain and I don't, or I think I have pain and I'm not cognizant of the fact that I don't have pain, it's all in my head and it's a legitimate thing I am telling you that I think I have pain, that behavior had improved. And by 2000, after the allegation that he was disabled, he had demonstrated that he had learned skills for management of his pain, that is, management of his adjustment disorder. And the ALJ's finding that it was a non-severe impairment, did not cause more than minimal work-related limitations, is not an issue. So Mr. Nolan's latest arguments about the pain perception greatly magnified, was greatly magnified by Mr. Nolan's psychological status, is really improper. It's not placed correctly, and it's contrary to his position on the Step 2 finding. What about the Step 4, Step 5? There are three reasons why Mr. Nolan's analysis of the past relevant work issue is incorrect and should not be upheld. First of all, the Supreme Court told us in Thomas that it's a useful, workable, effective, and efficient proxy for the Step 5 determination. As counsel pointed out, the job need not exist in the national economy, although elevator operator there are a few, for Step 5 to result in a finding that the claimant could perform work in the national economy as a proxy. So the significant number issue is not relevant because the ability to do his past relevant work shows that he can do, as a proxy, more efficiently than actually going to Step 5, other work that exists. The second reason is that Nolan's analysis will treat- I want to make sure I understand that. What you're saying is that if at Step 4 you can demonstrate he could do both, that he should be able to do half of both at Step 5? The distinctions that Mr. Nolan is drawing are not supported by the case record. Is that what you were saying, though? Is that the lesson you take from Thomas? The lesson I take from Thomas is that if you can do your past relevant work, then- Even if that job doesn't exist. Even if it doesn't exist, then- Then you can do something that is a subset of that. And a finding of not disabled is appropriate. That's correct. So to remand this case for further proceedings is unnecessary because a proxy exists for the significant number of jobs finding. That is, that he did supervisory work as part of his past relevant. There is supervisory non-physical labor. That's correct. And that's a record? That's correct. The V.E. gave extensive testimony about that, as well as Mr. Nolan providing an explanation of what he did. And we either have a job as supervisor with aspects of the actual auto body repair work, because the vocational expert testified at Excerpts 425 that plaintiff, quote, did do some auto body repair. And under Mr. Nolan's analysis, if that means he just had aspects, then it's all right. The ALJ's decision that he could return to his past relevant work as generally performed is an appropriate finding. If there were two full jobs, as the V.E. also seemed to testify to a combination of jobs, then there's no reason in this case to find that the ALJ's separating those two jobs out was improper. In Vertigan, the vocational expert said plaintiff had past relevant work as a pharmacy clerk and as a sales clerk. The ALJ's decision said she can return to her work as a cashier. There was no V.E. testimony that she did work as a cashier. In Valencia, the V.E. We have cases. Okay. Again, in Valencia, I'll say that there was no V.E. testimony that she could return as a tomato sorter. In this case, we have vocational expert testimony that was extensive. We have the explanation of what he did from plaintiff. And the ALJ was entitled to rely on those two jobs. Additionally, Nolan's analysis will treat similarly situated people desperately for no apparent reason. If the jobs were separated by one day, the supervisor and the auto body work, he switched from jobs either because of a promotion or he switched employers, we wouldn't be here because he had obviously two sets of jobs. 8261 says clearly these situations are going to exist. There may be a little more exertional requirement in some jobs. Let's look at it as it exists in the national economy. There may be substantial elements of other jobs. Get a vocational expert. That's what the ALJ did and properly relied on the vocational expert's testimony. All right. Thank you. Thank you. It's my position that to find he could return to a supervisory job at step five would be a violation of the Chenery case, which says that the court would be able to uphold an administrative agency's finding only on the basis espoused in the agency's decision. At step two, we did not need to argue that he had a severe psychological impairment. That is because at steps four and five, once a claimant has shown that he has any severe impairment at step two, the ALJ is required to consider the effects of all impairments, both severe and non-severe. Opposing counsel says that the psychological pain was improved shortly after Dr. Morell's report. That is incorrect. In the SAFE report by Dr. Anderson dated in the year 2000, he said that even at that time the major part of his claimant's difficulty was psychologically based. In Waddell's findings, I refer the court to my discussion on page 36, footnote six of my opening brief. The ALJ misinterpreted those findings, and they do not suggest that this claimant's pain is unreal. As for the physical pathology, the MRI finding, MRI test results are at transcript and excerpts page 314. Those do show significant pathology. Thank you very much. Thank you. Thank you, counsel. We do appreciate your argument. Well argued. And we will submit the case.
judges: Fisher, Gould, Bea